1
2
3
4
5
6
7
8              **IN THE UNITED STATES DISTRICT COURT**
9             **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   CLIFF ROGERS, et al.,                          CASE NO. CV F 09-2107 LJO DLB
12                    Plaintiff,                     **ORDER ON DEFENDANT AMERICAN**
                                                    **GENERAL FINANCIAL SERVICES, INC.'S**
13        vs.                                        **F.R.Civ.P. 12 MOTION**
                                                    (Doc. 6.)
14   CAL STATE MORTGAGE CO.
     INC., et al,
15
                     Defendants.
16   _____/

17                            **INTRODUCTION**

18        Defendant American General Financial Services, Inc. ("AGFS") seeks to dismiss as meritless

19   and time barred plaintiffs Cliff Rogers and Glenna Rogers' (collectively "Mr. and Mrs. Rogers'")

20   "predatory lending" and unfair debt collection claims arising from a refinance loan, default and mortgage

21   on Mr. and Mrs. Rogers Oakdale, California property ("property").  Mr. and Mrs. Rogers filed no papers

22   to oppose dismissal of their claims.  This Court considered AGFS' F.R.Civ.P. 12(b)(6) motion to dismiss

23   on the record and VACATES the January 21, 2010 hearing, pursuant to Local Rule 230(c), (g).  For the

24   reasons discussed below, this Court DISMISSES this action against AGFS.

25                            **BACKGROUND**

26                **Mr. And Mrs. Rogers' Loan and Default**

27        On July 26, 2001, Mr. and Mrs. Rogers procured a $372,000 refinance property loan from

28

                                              1

defendant Cal State Mortgage Co., Inc. ("Cal State").[1]  The loan was evidenced by a promissory note and secured by a Deed of Trust ("DOT") on the property and which was recorded on July 31, 2001.[2] AGFS is the current DOT beneficiary.

The DOT provides: "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."

Mr. and Mrs. Rogers defaulted on the loan.  Non-party Integrated Lender Services recorded a Notice of Default and Election to Sell under Deed of Trust ("NOD") on May 22, 2009.  The NOD admonished Mr. and Mrs. Rogers that if they did not cure the default, the property could be sold.  Mr. and Mrs. Rogers telephoned defendants to seek reduction of the loan's principal balance "in alignment with current market values" and a "reduction in monthly payments."

After Mr. and Mrs. Rogers failed to cure their default, a Notice of Trustee's Sale was recorded on October 7, 2009.

## Mr. And Mrs. Rogers' Claims

On October 30, 2009, Mr. and Mrs. Rogers filed their complaint ("complaint") to allege that:

1. "[D]efendants are not persons entitled to enforce the alleged debt because they lack standing and legal capacity to enforce the instrument(s) and engaged in wrongful activities";

2. "[D]efendants used predatory lending practices, in the issuance and servicing of plaintiff's [sic] mortgage loan";

3. "Plaintiff [sic] is a victim of unfair debt collections practices";

4. "Having provided nothing by way of consideration to Rogers, the Note fails and by such failure of the Note, the Trust Deed is also effectively null and void";

5. No "entitlement to foreclose has been determined."

The complaint asserts six claims which will be addressed separately below.  The complaint purports to

---

[1]     AGFS and Cal State will be referred to collectively as "defendants."

[2]     Documents pertaining to Mr. and Mrs. Rogers' loan and default were recorded with the Stanislaus County Recorder.

2

1    seek injunctive and declaratory relief and statutory and punitive damages.

2                                   **DISCUSSION**

3                   **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

4            AGFS attacks the complaint as "a last ditch effort to avoid the consequences." AGFS notes that

5    it was not involved in origination of Mr. and Mrs. Rogers' loan and thus "has nothing to do with alleged

6    non-disclosure or the purported fraudulent conduct."

7            A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

8    forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

9    of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

10   whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

11   support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco

12   Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

13   there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

14   cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling

15   v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

16           In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

17   most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

18   whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty

19   Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

20   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

21   *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

22   need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly

23   be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911

24   F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

25   not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement

26   to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

27   of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007)

28   (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the

                                            3

light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Citation omitted.)

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a

4

Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]   A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

As such, this Court is able to consider Mr. and Mrs. Rogers' pertinent loan and foreclosure documents.

### Failure To Tender

AGFS identifies as "a global problem" to all claims Mr. and Mrs. Rogers' lack of standing arising from their failure to tender "the undisputed obligation in full."

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485); *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971).  "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997).  In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal has explained:

---

[3]    "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

. . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.  (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495.)  Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851.

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988).  The debtor bears "responsibility to make an unambiguous tender of

1  the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200

2  Cal.App.3d at 1165, 246 Cal.Rptr. 421.

3       AGFS is correct that Mr. and Mrs. Rogers "have not alleged that they are either willing or able

4  to tender the money owed." The absence of an allegation of ability to tender amounts owed dooms Mr.

5  and Mrs. Rogers' claims. Mr. and Mrs. Rogers' inability to make monthly payments reflects inability

6  to tender amounts owed to bar Mr. and Mrs. Rogers' claims and requested relief.

7                                   **Injunctive Relief**

8       The complaint's first claim is entitled "injunctive relief" and alleges that the "unlawful trustee

9  foreclosure is fatally defective as the trustee was inherently lacking in authority to legally effect a

10  foreclosure process due to the lack of the valid contract with a valid original note." The claims seeks

11  to "stay defendants" until "the court determines . . . the holder in due course with the wet ink signature

12  on promissory note and original contract." The claim asserts defendants' lack of standing to proceed

13  with a foreclosure sale with their failure "to provide valid verification of the alleged debt documents and

14  the original promissory note."

15       AGFS correctly notes that "possession of the original promissory note is not a prerequisite to

16  foreclosure" and the "entity initiating non-judicial foreclosure need not physically possess the

17  promissory note, nor need the trustee ascertain who does possess the note before proceeding with the

18  foreclosure."

19       "If the trustee's deed recites that all statutory notice requirements and procedures required by law

20  for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has

21  been conducted regularly and properly." *Nguyen*, 105 Cal.App.4th at 440, 129 Cal.Rptr.2d 436. The

22  California Court of Appeal has explained non-judicial foreclosure under California Civil Code sections

23  2924-2924l:

24            The comprehensive statutory framework established to govern nonjudicial
          foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating

25        to notice and right to cure. It would be inconsistent with the comprehensive and
          exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another

26        unrelated cure provision into statutory nonjudicial foreclosure proceedings.

27  *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assocs. v. Safeco Title Ins.*

28  *Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of

1   the power of sale contained in a deed of trust.")

2   Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of

3   their authorized agents" may conduct the foreclosure process.  Under California Civil Code section

4   2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent

5   for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed

6   substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the

7   beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25

8   Cal.App.4th at 830, 30 Cal.Rptr.2d 777.  "The foreclosure process is commenced by the recording of

9   a notice of default and election to sell by the trustee."  *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d

10  777.

11  "Under Civil Code section 2924, no party needs to physically possess the promissory note."

12  *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, §

13  2924(a)(1)).  An "allegation that the trustee did not have the original note or had not received it is

14  insufficient to render the foreclosure proceeding invalid."  *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D.

15  Cal. 2007).

16  Mr. and Mrs. Rogers' implied "produce-the-note" theory is meritless.  The complaint supports

17  no basis for injunctive relief.

18  Moreover, injunctive relief is a remedy, not an independent claim, and requires a viable

19  supporting claim, which the complaint lacks.  "Injunctive relief is a remedy and not, itself, a cause of

20  action, and a cause of action must exist before injunctive relief may be granted."  *Shell Oil Co. v.*

21  *Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).  As reflected throughout this order, the complaint

22  lacks a viable claim to support injunctive relief.  In addition, preventing foreclosure would deny

23  defendant's their entitled remedy and defeat equity.

24  **Statutory Damages**

25  The complaint's second claim is entitled "statutory damages" and appears to seek damages under

26  the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., Real Estate Settlement Procedures Act

27  ("RESPA"), 12 U.S.C. §§ 2601, et seq., Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§

28  1692, et seq., California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code, §§

8

1788, et seq., and the California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code, §§ 17200, et seq.

### TILA Violations

The claim purports to allege TILA violations arising from:

1.  Refusal "to validate and otherwise make a full accounting and required disclosures as to the true finance charges and fees";

2.  Improper retention of "funds belonging to Plaintiff in amounts to be determined"; and

3.  Failure to "disclose the status of the ownership of said loans."

AGFS notes that the improper retention of funds and failure to disclose loan ownership do not support TILA violations. A private TILA remedy is limited to failure to properly disclose the annual percentage rate, the finance charge, the amount financed, the total of payments, payment schedule or three-day right to rescind. *See* 15 U.S.C. §§ 1638(a)(2)-(6), 1640(a)(hanging paragraph); 12 C.F.R. § 226.23(a)(3) & n. 48.

AGFS did not make or originate Mr. and Mrs. Roberts' 2001 loan, and the complaint acknowledges that "Cal State was the original lender and original Beneficiary under that certain Deed of Trust . . ." AGFS was not a TILA creditor since Mr. and Mrs. Roberts' debt was not originally owed to Cal State to alleviate AGFS of TILA disclosures. The complaint alleges nothing to support a TILA violation by AGFS.

### TILA Damages Limitations Period

AGFS argues that a TILA damages claim is barred by the one-year limitations period.

A TILA damages claims is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D. Or. 2005), *aff'd*, 280 Fed.Appx. 667 (9th Cir. 2008). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth Circuit Court of Appeals noted in *Meyer v. Ameriquest*

1    *Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

2        The failure to make the required disclosures occurred, if at all, at the time the loan
         documents were signed.  The [plaintiffs] were in full possession of all information
3        relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day
         the loan papers were signed.
4

5        Mr. and Mrs. Rogers consummated their in July 2001 and filed their complaint on October 30,

6    2009, more than eight years after their last loan transaction to render a TILA damages claim time barred.

7                          ***TILA Rescission Limitations Period***

8        AGFS further argues that a TILA rescission claim is barred by the three-year limitations period.

9        TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without

10   penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

11   *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a).  TILA rescission may be

12   extended up to three years if the lender fails to comply with TILA disclosure requirements.  *Semar*, 791

13   F.2d at 701-702; 15 U.S.C. § 1635(f).

14       15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

15       An obligor's right of rescission **shall expire three years after the date of
         consummation of the transaction** or upon the sale of the property, whichever occurs
16       first, notwithstanding the fact that the information and forms required under this section
         or any other disclosures required under this part have not been delivered to the obligor
17       . . . (Bold added.)

18   The United States Supreme Court has described as "manifest" Congress' intent to prohibit rescission

19   after the three-year period has run:

20           Section 1635(f), however, takes us beyond any question whether it limits more
         than the time for bringing a suit, by governing the life of the underlying right as well. The
21       subsection says nothing in terms of bringing an action but instead provides that the "right
         of rescission [under the Act] shall expire" at the end of the time period. It talks not of a
22       suit's commencement but of a right's duration, which it addresses in terms so
         straightforward as to render any limitation on the time for seeking a remedy superfluous.
23       There is no reason, then, even to resort to the canons of construction that we use to
         resolve doubtful cases, such as the rule that the creation of a right in the same statute that
24       provides a limitation is some evidence that the right was meant to be limited, not just the
         remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*,
25       at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692,
         693-694, 48 L.Ed. 1067 (1904).
26

27   *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998); *see Miguel v. Country*

28   *Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) ("§ 1635(f) is a statute of repose, depriving the

                                          10

courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

Given Mr. and Mrs. Rogers' 2001 loan transaction, the TILA rescission limitations period expired years ago to bar a TILA rescission claim.

### *Inadequate Tender*

AGFS faults the claim's lack of allegations that Mr. and Mrs. Rogers are willing or able to tender loan proceeds to invoke TILA rescission.   The "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan."   *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)

Neither TILA nor its implementing Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that

11

a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'"

*Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit, relying on *Large*, explained:

> Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds."  *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any."  *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place."  *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007).  A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations."  *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

12

1    *Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that

2    borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial

3    judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy

4    of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

5    1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds

6    given the lender's non-egregious TILA violations and equities heavily favoring the lender).[4]

7        AGFS correctly contests Mr. Kelley's attempt to rescind.  The complaint does not address

8    conditions precedent to permit rescission.  The complaint is not a timely, valid rescission notice.  The

9    complaint's silence on Mr. and Mrs. Rogers' tender of loan proceeds is construed as their concession

10   of inability to do so.  "Clearly it was not the intent of Congress to reduce the mortgage company to an

11   unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest."

12   *American Mortgage*, 486 F.3d at 820-821.  Without Mr. and Mrs. Rogers' meaningful tender, TILA

13   rescission is an empty remedy, not capable of being granted.  The absence of a sufficiently alleged notice

14   of rescission and tender of loan proceeds dooms a TILA rescission claim to warrant its dismissal.

15                             ***RESPA Violations***

16        AGFS challenges the complaint's absence of facts to support a RESPA violation.  AGFS

17   deciphers the complaint to allege that "Defendants failed to respond to such a qualified written request

18   ('QWR')."  AGFS correctly notes the absence of allegations that Mr. and Mrs. Rogers "ever sent a QWR

19   to AGFS."

20        Under RESPA, a QWR is a "written request from the borrower (or an agent of the borrower) for

21   information relating to the servicing of such loan."  12 U.S.C. § 2605(e)(1)(A).  Among other things,

22   a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable,

---

23

24        [4]     The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

25          Congress did not intend to require a lender to relinquish its security interest when it is now known that the

26          borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

27   *Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

28

1    that the account is in error or provides sufficient detail to the servicer regarding other information sought

2    by the borrower."  12 U.S.C. § 2605(e)(1)(B)(ii).

3         AGFS correctly notes that a mere allegation of failure to respond to a QWR does support a

4    RESPA claim.  "Whoever fails to comply with this section shall be liable to the borrower . . . [for] any

5    actual damages to the borrower as a result of the failure . . ."  12 U.S.C. § 2605(f)(1)(A).  "However,

6    alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a

7    minimum, also allege that the breach resulted in actual damages."  *Hutchinson v. Delaware Sav. Bank*

8    *FSB*, 410 F.Supp.2d 374, 383 (D. N.J. 2006).

9         A purported RESPA claim fails to allege pecuniary loss from AGFS' failure to respond to a

10   QWR.  Such omission is fatal to a claim's mere reliance on a RESPA violation.

11        AGFS is further correct that the complaint fails to support a RESPA violation "based on an

12   undisclosed yield spread premium" given that AGFS did not originate Mr. and Mrs. Rogers' loan.

13        The final dagger to a RESPA claim is the one-year limitations period of 12 U.S.C. § 2614(a).

14   The "primary ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high settlement

15   charges' caused by kickbacks, fee-splitting, and other practices that suppress price competition for

16   settlement services.  This ill occurs, if at all, when the plaintiff pays for the service, typically at the

17   closing."  *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12

18   U.S.C. §2601(a)); *see Edwards v. First American Corp.*, 517 F.Supp.2d 1199, 1204 (C.D. Cal. 2007).

19   Mr. and Mrs. Rogers closed their loan years prior to the October 30, 2009 filing of their complaint.

### Debt Collection

21        The complaint "requests that the court declare that Plaintiff [sic] is protected by the Fair Debt

22   Collections Practices Act."

23        The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts

24   for others.  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *mod. on other grounds*, 761

25   F.2d 237 (5th Cir. 1985).  The FDCPA defines a debt collector as "any person . . . who regularly collects

26   or attempts to collect . . . debts owed or due or asserted to be owed or due another."  15 U.S.C. §

27   1692a(6).  A "debt collector" does not include a person who collects or attempts to collect a debt "to the

28   extent such activity . . . concerns a debt which was not in default at the time it was obtained by such

person." 15 U.S.C. 1962a(6)(F).  "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  *Perry*, 756 F.2d at 1208.

Moreover, "foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002).  As the fellow district court in *Hulse*, 195 F.Supp.2d at 1204, explained:

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money.  The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor.  But, foreclosing on a trust deed is an entirely different path.  Payment of funds is not the object of the foreclosure action.  Rather, the lender is foreclosing its interest in the property.
>
> . . . Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

Foreclosure on the DOT does not subject AGFS to a FDCPA claim, which fails as a matter of law to warrant its dismissal.  The complaint acknowledges that AGFS is the present DOT beneficiary and thus owed the debt on Mr. and Mrs. Rogers' loan.  The complaint lacks allegations of AGFS' unfair or unconscionable debt collection acts.  There is no question that Mr. and Mrs. Rogers are in default and that foreclosure is authorized under the DOT and promissory note.

AGFS is further correct that a RFDCPA claim fails for similar reasons as a FDCPA claim.

The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  Cal. Civ. Code, § 1788.1(b).  The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code, § 1788.2(c).  The "law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDCA." *Gamboa v. Trustee Corps*, 2009 WL 656285, * 4 (N.D. Cal. 2009).

Mr. and Mrs. Rogers lack a viable claim based on debt collection practices.

### *The UCL*

Without explanation, the complaint alleges that Mr. and Mrs. Rogers are entitled to damages under the UCL.  AGFS faults a UCL claim in the absence of an "underlying violation of law."

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200)).   An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999).   According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992); *see Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178, 107 Cal.Rptr.2d 209 (2001) ("relief under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) . . . stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action").

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548 (1999).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived." *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).   An "unfair practices claim under section 17200 cannot be predicated on vicarious liability." *Emery v. VISA Int'l Serv. Ass'n*, 95 Cal.App.4th 952, 960, 116 Cal.Rptr.2d 25 (2002).   "The concept of vicarious liability has no application

16

1   to actions brought under the unfair business practices act." *People v. Toomey,* 157 Cal.App.3d 1, 14,

2   203 Cal.Rptr. 642 (1984). "A defendant's liability must be based on his personal 'participation in the

3   unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or

4   17500." *Toomey*, 157 Cal.App.3d at 15, 203 Cal.Rptr. 642.

5       The complaint fails to allege unfair business practices or statutory violation elements with

6   requisite particularity to support a UCL claim to further warrant dismissal of the complaint's second

7   claim.

8                                           **Fraud**

9       The complaint's (third) fraud claim alleges:

10  1.   "Defendants' representatives knew at the time that the agreement was executed that the

11       basis for which they rated the loan and the package offered was based upon fabricated

12       formulas designed to defraud the plaintiff";

13  2.   "[N]o one disclosed certain facts that they were necessarily required to disclose and went

14       even further to conceal such facts";

15  3.   "[D]efendants concealed from the plaintiff [sic] their true intent to use the mortgage as

16       a securitized asset"; and

17  4.   "[D]efendants concealed the fact that they intended on making plaintiff pay for non-

18       existent fees which defendants told plaintiff [sic] were necessary for him to get a loan."

19      AGFS characterize the fraud allegations a vague and unsubstantiated. AGFS notes that the fraud

20  allegations address loan origination in which AGFS lacked involvement. AGFS concludes "there is no

21  factual allegation attributing the fraud to AGFS."

22                                        *Elements*

23      The elements of a California fraud claim are: (1) misrepresentation (false representation,

24  concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

25  to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

26  631, 638, 49 Cal.Rptr.2d 377 (1996). The same elements comprise a cause of action for negligent

27  misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

28  *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

                                          17

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.

AGFS argues that Mr. and Mrs. Rogers lack a viable claim that they reasonably relied on a misrepresentation or non-disclosure of their loan terms in that the complaint acknowledges that they signed the DOT and promissory note which expressed their loan terms. "Reliance on an alleged misrepresentation . . . is not reasonable when plaintiff could have ascertained the truth through the exercise of reasonable diligence. [Citation.] Reasonable diligence requires the reading of a contract before signing it." *Brookwood v. Bank of America*, 45 Cal.App.4th 1667, 1674, 53 Cal.Rptr.2d 515 (1996).

The fraud claim fails to allege elements sufficiently to support a claim. The claim is particularly deficient on the justifiable reliance element to warrant its dismissal.

### Limitations Period

AGFS relies on a limitations defense and points to the three-year limitations of California Code of Civil Procedure section 338(d) for an "action for relief on the ground of fraud." AGFS is correct that alleged fraud arose at the July 2001 origination of Mr. and Mrs. Rogers' loan to render fraud claims time barred.

### Absence Of Particularity

AGFS further argues that a fraud claim is doomed for failure to comply with F.R.Civ.P. 9(b) particularity requirements.

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5]

---

[5]   F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107. A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Cvi.P. 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

19

1  1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the

2  misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates,

3  places, benefits received and other details of the alleged fraudulent activity.")

4      As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough

5  information to enable them 'to know what misrepresentations are attributable to them and what

6  fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*,

7  38 F.Supp.2d 1158, 1163 (C.D. Ca. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp.

8  1427, 1433 (N.D. Ca. 1988)). "Rule 9(b) does not allow a complaint to merely lump multiple defendants

9  together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant

10  . . . and inform each defendant separately of the allegations surrounding his alleged participation in the

11  fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds*

12  *Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)). "In the context of a fraud suit involving

13  multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the

14  alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (quoting *Moore v. Kayport Package Express, Inc.*,

15  885 F.2d 531, 541 (9th Cir. 1989)).

16      Moreover, in a fraud action against a corporation, a plaintiff must "allege the names of the

17  persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke,

18  what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*

19  2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

20      The complaint is severely lacking and fails to satisfy F.R.Civ.P. 9(b) "who, what, when, where

21  and how" requirements as to AGFS. The complaint makes no effort to allege names of the persons who

22  made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they

23  said or wrote, and when it was said or written. The FAC fails to substantiate the circumstances alleging

24  falseness attributable to AGFS. The complaint lacks facts to support each fraud element. The fraud

25  claim's deficiencies are so severe to suggest no potential improvement from an attempt to amend.

26                          **Cancellation Of Note And DOT**

27      The complaint's fourth claim is entitled "Cancellation of Written Instruments" and alleges that

28  "no Defendant or other party has ever possessed a legitimate security in the subject property that would

otherwise have enabled them to collect payments allegedly due under the Note and/or Trust Deed." The claim alleges that the "Note . . . is unenforceable due to failed consideration on the part of the lender" and "the corresponding Trust Deed must also fail."

The complaint's general allegations observe that "the Note states that the loan had already been 'received' at the time of its execution by Plaintiff and was the alleged consideration in return for Rogers' 'promise to pay' on the Note."

AGFS attributes the complaint to claim that Mr. and Mrs. Rogers are not required to repay their $372,000 loan "because their promise to repay was not supported by a simultaneously exchange of consideration." AGFS is correct that such a claim is "frivolous" given that Mr. and Mrs. Rogers "cannot simply walk away with $372,000."

AGFS also notes that Mr. and Mrs. Rogers' delay bars cancellation or rescission of the promissory note or DOT. California Code of Civil Procedure section 337(3) provides that an "action based upon the rescission of a contract in writing" must be commenced with four years "from the date upon which the facts that entitle the aggrieved party to rescind occurred." A purported claim as to consideration received arose at the time of Mr. and Mrs. Rogers' July 2001 loan to render rescission time barred. AGFS further points out Mr. and Mrs. Rogers' failure to restore "everything of value" they received or to "offer to restore" to satisfy California Civil Code section 1691's rescission requirements.

In addition, the complaint's fourth claim asserts that "no valid assignment of the Trust Deed was made from the original lender or any third party(s)" to render the promissory note "unsecured by the Trust Deed." AGFS is correct that the complaint lacks facts of an invalid DOT assignment. Mr. and Mrs. Rogers offer nothing to repudiate their obligations arising from an invalid assignment. California foreclosure law does not require recording of a deed of trust assignment to initiate foreclosure. As a reminder, under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. "The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. The complaint's fourth claim fails.

**Quiet Title**

The complaint's (fifth) quiet title claim alleges that "the defendants' claim of interest is without any right whatsoever, and said Defendants have no equitable right, claim, or interest in said property." The claims seeks This Court's declaration that the property "is vested in plaintiffs alone."

AGFS points to a "defect" in the quiet title claim – "the missing averment of tender or even the promise of tender of the amount the Rogers admit they borrowed."

A trustor/borrower is unable to "quiet title without discharging his debt. The cloud upon his title persists until the debt is paid." *Aguilar v. Bocci,* 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974). The complaint fails to allege Mr. and Mrs. Rogers' tender of borrowed amounts or ability to so tender. Mr. and Mrs. Rogers' default negates reasonable expectation of their ability to tender. The complaint lacks a factual or legal basis to challenge foreclosure and to establish a basis for Mr. and Mrs. Rogers to seek to quiet title in their favor.

Moreover, defendants have held no more than a security interest in the DOT, not an adverse claim in the property. A deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in payment of his debt." *Lupertino v. Carbahal,* 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973). The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property." Cal. Code Civ. Proc., § 760.030. As such, Mr. and Mrs. Rogers are not entitled to quiet title with the failure of their other claims.

**Declaratory Relief**

The complaint's (sixth) declaratory relief claim seeks this Court's declarations or determinations that:

1.   "Plaintiff [sic] is protected by the Fair Debt Collections Practices Act";

2.   Whether "the defendant can demonstrate legal status and standing in the true legal capacity as holder in due court [sic] of the original signed deed of trust and any related note";

3.   Whether "defendant(s) violated state securities laws" by "fraudulent selling of eligible notes when in fact they were not selling them"; and

1        4.      The "respective rights and interests of the respective parties in and to the subject note and

2                mortgage."

3        AGFS is correct that to the extent the claim addresses fraud, it fails to comply with F.R.Civ.P.

4   9(b) particularity requirements.  Moreover, the complaint is unable to pursue time barred fraud claims

5   through the guise of declaratory relief.

6        In addition, the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in

7   pertinent part:

8                In a case of actual controversy within its jurisdiction . . . any court of the United
                 States, upon the filing of an appropriate pleading, may declare the rights and other legal
9                relations of any interested party seeking such declaration, whether or not further relief
                 is or could be sought.  Any such declaration shall have the force and effect of a final
10               judgment or decree and shall be reviewable as such.

11  28 U.S.C. §2201(a).

12       The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

13  300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."

14  *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA

15  "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21

16  (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is

17  a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142,

18  143 (9th Cir. 1994).

19       As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

20  controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

21  the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

22  273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

23               A justiciable controversy is thus distinguished from a difference or dispute of a
                 hypothetical or abstract character; from one that is academic or moot. . . . The
24               controversy must be definite and concrete, touching the legal relations of parties having
                 adverse legal interests. . . . It must be a real and substantial controversy admitting of
25               specific relief through a decree of a conclusive character, as distinguished from an
                 opinion advising what the law would be upon a hypothetical state of facts.
26
    *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).
27
         Mr. and Mrs. Rogers attempt to manufacture a declaratory relief claim on grounds that the parties
28

23

have differing rights to the "subject note and mortgage."  The failure of Mr. and Mrs. Rogers' claims demonstrates the absence of an actual controversy subject to declaratory relief.  A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).

The key problem is that the declaratory relief claim fails to articulate an available judicial declaration.  It merely addresses a purported controversy regarding foreclosure and points which this Courts and other have rejected.  Without more, there is no actual controversy subject to declaratory relief, especially given the failure of Mr. and Mrs. Rogers' claims.

### Alternative F.R.Civ.P. 12(e) Motion For More Definite Statement

With dismissal of Mr. and Mrs. Rogers' claims, this Court need not address AGFS' alternative F.R.Civ.P. 12(e) motion for a more definite statement.

### Attempt At Amendment And Malice

Mr. and Mrs. Rogers' claims are insufficiently pled and barred as a matter of law.  Mr. and Mrs. Rogers are unable to cure their claims by allegation of other facts and thus are not granted an attempt to amend.

Moreover, this Court is concerned that Mr. and Mrs. Rogers brought this action in absence of good faith and that Mr. and Mrs. Rogers exploit the court system solely for delay or to vex defendants. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant."  *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against AGFS;

2. DIRECTS the clerk to enter judgment in favor of defendant American General Financial

Services, Inc. and against plaintiffs Cliff Rogers and Glenna Rogers in that there is no just reason to delay to enter such judgment given that Mr. and Mrs. Rogers' claims against AGFS are clear and distinct from the claims against defendant Cal State Mortgage Co. Inc.; and

3.   ORDERS Mr. and Mrs. Rogers' counsel, no later than January 18, 2010, to file papers to show cause why this Court should not dismiss this action against defendant Cal State Mortgage Co. Inc.

**This Court ADMONISHES Mr. and Mrs. Rogers and their counsel that this Court will dismiss this action against Cal State Mortgage Co. Inc. if Mr. and Mrs. Rogers' counsel fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against defendant Cal State Mortgage Co. Inc.**

IT IS SO ORDERED.

**Dated:      January 8, 2010          _____/s/ Lawrence J. O'Neill_____**
                                              UNITED STATES DISTRICT JUDGE

25